WINNETKANS INTERESTED IN PROTECTING THE ENVIRONMENT (WIPE), Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

First District (1st Division)   No. 76-1643

Opinion filed December 5, 1977.

476

George E. Bullwinkel, Gene H. Hansen, and Jeffrey T. Williams, all of Keck, Cushman, Mahin & Cate, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (Anne K. Markey, Assistant Attorney General, of counsel), for respondents.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

The Winnetkans Interested in Protecting the Environment, an unincorporated association (petitioner), seeks review of an order of the Illinois Pollution Control Board (Board), denying reconsideration of a prior order dismissing petitioner's complaint. (Ill. Rev. Stat. 1975, ch. 111½, par. 1041; Ill. Rev. Stat. 1975, ch. 110A, par. 335.) The action was brought against the Environmental Protection Agency (respondent) for alleged violations of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a)) and Board Procedural Rules in connection with the issuance of a permit to the Village of Winnetka (Village) for the operation of a boiler used for the generation of electricity.

In this court, petitioner contends that the Board's finding that designated paragraphs of the complaint were duplicitous was without basis in law, unsupported by evidence and arbitrary. Petitioner also urges that the complaint states a valid cause of action and is therefore not frivolous, as the Board found and that a citizen enforcement proceeding under section 31(b) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(b)) was proper in this case. Respondent and the Board contend that the Board's interpretation of the statutory terms "duplicitous" and "frivolous" should be given deference and certain allegations of the complaint were duplicitous while others were frivolous.

On August 27, 1976, petitioner filed a complaint (PCB No. 76-215) with the Board alleging that respondent had issued a permit to the Village on July 15, 1976, allowing the operation of boiler No. 8 at a designated generating plant. Paragraph 4 of the complaint charged that in issuing this permit, respondent exceeded its lawful authority and violated section 39(a) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a)) (hereinafter "the Act"), and Board Rules 103(b) and 303 for the following reasons:

4.A. Respondent accepted "stack test results submitted by * * * [the Village] on or about July 12, 1976 * * *" when respondent knew or should have known that evaluation of the date supporting the test results according to proper engineering practice would show violation of Board rules;

4.B. Respondent knew or should have known the stack test results were

a misrepresentation of actual boiler operation because the tests "assume[d] the complete combustion of all fuel consumed * * *";

4.C. The stack test results were also false because they were based on data taken from "deliberately non-representative operating conditions * * *" involving the suppression of normal daily plant operations;

4.D. The permit allows the burning of any kind of coal, although the tests and permit applications were limited to a specified type of coal "for the purpose of assuring minimum particulate emissions * * *";

4.E. Respondent relied on data from stack tests conducted on May 12, 1976, when, according to a Village promise and an order of a Board hearing officer, a technical representative of petitioner was to have been allowed to observe the test. The Village falsely told petitioner the May 12 tests were cancelled subject to future rescheduling and as a result, the technical representative could not view the tests. The Village and respondent are barred from relying on the test to support the permit application;

4.F. The tests could not be relied on by the Village or respondent because they were not conducted by or under the supervision of an Illinois-licensed engineer; and

"[4.]G. The subject permit was issued by the Agency as the result of improper pressure, undue influence and actual or implied threats of economic and policical [sic] reprisal by Winnetka and its agents and representatives in Springfield, Illinois on or about January 13, 1976 and at various times and places which WIPE cannot now allege with more specificity without the benefit of prehearing discovery."

The complaint requested the permit be declared void and respondent be found in violation of the Act and that the statutory civil penalty be assessed.

On the same date, petitioner filed a motion to consolidate this matter with an earlier pending enforcement action (PCB No. 75-363) brought by petitioner against the Village. The motion referred to the prior proceedings as an enforcement action for the Village's "failure to have an operating permit while operating its No. 8 boiler for more than a year prior to the issuance of the disputed July 15, 1976 permit."

Respondent filed a motion to dismiss. On August 27, 1976, the Board scheduled a hearing pursuant to Board Rule 306 to determine whether the complaint is "duplicitous or frivolous * * *." The Village, although not a party to the proceedings, filed a memorandum "Suggesting Dismissal of the Complaint." The Village stated that the complaint was "duplicitous (in the sense of being duplicative) and frivolous (in the sense of being unnecessary) because it challenges Agency action on issues which might and, no doubt, would be raised by * * * [petitioner] in its pending case against the Village * * *, PCB No. 75-363."

On September 15, 1976, the Board issued a brief order dismissing the complaint and reciting without specificity that the Board found "that several of the allegations of the Complaint are duplicitous of the matter now before the Board in * * * (PCB 75-363). The balance of the allegations are so generalized as to be frivolous."

Petitioner filed a motion for reconsideration challenging the Board's omission of findings of fact or conclusions of law in its order and its failure to specify which portions of the complaint were duplicitous and which were frivolous.

On November 10, 1976, the Board issued an opinion and order denying the motion for reconsideration and setting out the following reasons for the order of September 15, 1976, in accord with Rule 306. The opinion first stated the Board's finding that paragraphs 4.A. through 4.D. and paragraph 4.F., as above summarized, were duplicitous of the pending matter PCB No. 75-363. The order expressed the Board's belief that the issues of the compliance of the boilers with emission limitations and the propriety of the issuance of permits could be most expeditiously resolved by pleading and proof in the pending proceedings. The Board found the charges in paragraph 4.E. to be frivolous because no facts had been alleged to show that respondent had a duty not to consider the results of the challenged stack test. The order also found the allegations of paragraph 4.G. frivolous as stating only a "bare conclusion" of law, in effect a mere suspicion.

The pertinent statute authorizes any person to file a complaint with the Board alleging violation of the Act or Board rules or regulations. The section further provides: "Unless the Board determines that such complaint is duplicitous or frivolous, it shall schedule a hearing * * *" according to specified notice requirements. (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(b).) The Board has adopted a parallel rule, Procedural Rule 306, providing for Board determination of whether a complaint is duplicitous or frivolous.

The meaning of the statutory term "duplicitous" is not disputed here. Both parties have cited the construction of the term in *League of Women Voters v. North Shore Sanitary Dist.* (1970), 1 Ill. P.C.B. Op. 35, 36, where the Board stated that the reason for the prohibition of duplicitous complaints is the apprehension that private citizens' complaints "might flood the Board with too many cases raising the same issue and [might] unduly harass a respondent." Webster's Third New International Dictionary 702, 703 (1971) defines "duplicitous" as "showing duplicity." "Duplicity" is defined in part as "the quality or state of being double or twofold * * * the use of two or more distinct allegations or answers where one is sufficient: pleading double * * *."

■■ An administrative agency has the authority to construe statutory

provisions (*Sugden v. Department of Public Welfare* (1960), 20 Ill. 2d 119, 121, 169 N.E.2d 248) and to develop guidelines in aid of such interpretation (*People ex rel. Petersen v. Turner Co.* (1976), 37 Ill. App. 3d 450, 462, 346 N.E.2d 102). Such constructions are entitled to deference by reviewing courts unless clearly erroneous, arbitrary or unreasonable. (See *Legg v. Illinois Fair Employment Practices Com.* (1975), 28 Ill. App. 3d 932, 939, 329 N.E.2d 486.) In view of these principles, we are persuaded that the above definitions aptly state the intent of the legislature to empower the Board to dismiss complaints raising allegations identical or substantially similar to matters previously brought before the Board.

■■ The record before us does not include a duly certified copy of the earlier complaint brought by petitioner against the Village. (PCB No. 75-363.) In this regard we may not consider the uncertified photocopy of the complaint in the earlier case appended to petitioner's brief. (See *In re Annexation of Certain Territory* (1973), 16 Ill. App. 3d 140, 145, 304 N.E.2d 769 and Ill. Rev. Stat. 1975, ch. 110A, par. 335(h); Ill. Rev. Stat. 1975, ch. 110, par. 274.) However, with our permission petitioner has filed a supplemental record which includes a certified copy of the interim order previously entered by the Board in PCB No. 75-363 which describes the complaint in that case. Neither party has raised this issue regarding the record before us. Therefore, in the interest of expediency, we will proceed to determine the merits of the appeal.

■■ The complaint before us charges improper issuance of a permit based on faulty stack tests submitted to the Board in July 1976. The previous proceedings involved the allegation that the boiler had been operated without a permit since May 30, 1975. In our opinion, the two cases involve dissimilar factual issues based on different events which occurred during separate periods of time. We cannot agree that the instant complaint was duplicitous of the prior action.

■■ We next consider the Board's finding that paragraphs 4.E. and 4.G. of the complaint were frivolous under section 31(b) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(b)) and Procedural Rule 306. This statutory term has not been judicially interpreted. The Board has construed it to mean "[failure] to state a cause of action upon which relief can be granted * * *" (*Citizens for a Better Environment v. Reynolds Metals Co.* (1973) 8 Ill. P.C.B. Op. 45.) Similarly, in *Farmers Opposed to Extension of the Illinois Tollway v. Illinois State Toll Highway Authority* (1971), 2 Ill. P.C.B. Op. 119, the Board stated: "The 'frivolous' provision is designed to avoid expensive and time-consuming hearings on claims that cannot prevail even if the facts alleged are true." Webster's Third New International Dictionary 913 (1971) defines "frivolous" as "of little weight or importance: having no basis in law or fact * * *." According to the previously cited principles

regarding agency construction of enabling statutes, we accept this definition of the term "frivolous" as reasonable and in no way erroneous. Under the foregoing standards, a frivolous pleading is one that is either legally or factually deficient.

■■ As previously summarized, paragraph 4.E. of petitioner's complaint alleges that respondent violated section 39(a) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a)) and Board Procedural Rules 103(b) and 303 by issuing a permit in reliance on results from stack tests conducted in violation of a hearing officer's order that petitioner's technical representative be present during the testing process. These allegations do not state a violation of the Act or the rules and therefore were properly held to be "frivolous" by the Board.

Section 39(a) of the Act provides in part: "[I]t shall be the duty of the Agency to issue such a permit upon proof by the applicant that the facility * * * will not cause a violation of this Act or of regulations hereunder. The Agency shall adopt such procedures as are necessary to carry out its duties under this Section. In granting permits the Agency may impose such conditions as may be necessary to accomplish the purposes of this Act, and as are not inconsistent with the regulations promulgated by the Board hereunder." (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a).) Board Procedural Rule 103(b), cited in the complaint, sets out requirements governing permit applications, including standards for issuance. (Procedural Rule 103(b)(6).) The rule also authorizes the agency (respondent), to impose conditions upon permits and prescribes time limits controlling the duration of permits and applications for renewal permits. Board Procedural Rule 303, also cited in the complaint, permits joinder of additional interested parties by the Board.

According to the plain language of section 39(a) of the Act, respondent's duty to issue a permit depends on the presence of proof that the facility will not violate emission standards. Paragraph 4.E. of petitioner's complaint in substance charges a flaw in testing procedures. Such procedural irregularity might result in data insufficient to justify the issuance of a permit by respondent. However, to charge a violation of section 39(a), a complaint should connect the technical or procedural error with the ultimate factual issue, as to whether the permit application incorporated sufficient proofs. Therefore, without proper allegation by petitioner of the manner in which the absence of petitioner's technical representative tainted the data resulting from the test of boiler No. 8, no violation of section 39(a) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a)) has been pleaded. No violation of Procedural Rule 103(b) is stated by paragraph 4.E. The rule incorporates the requirement that tests comply with Board Rule 106. (Procedural Rule 103(b)(6)(C).) However, Rule 106 refers not to tests in accordance with orders of hearing officers but to tests in accordance with procedures

adopted by the Agency. We conclude that paragraph 4.E. does not charge a violation of the Act or the cited rules. The Board's dismissal of this paragraph as "frivolous" is affirmed.

We will add that paragraph 4.E. of the complaint charges the Village with violation of a hearing officer's order. However, the Village is not a party to these proceedings and petitioner has alleged no facts to demonstrate that respondent is in any way responsible for the action of the Village.

■■ The final issue is whether paragraph 4.G. of the complaint, dismissed by the Board as frivolous, is legally and factually sufficient. This paragraph charges respondent with issuing a permit "as the result of improper pressure, undue influence and actual or implied threats of economic and political reprisal * * *" by the Village and its agents. As above stated, the respondent's duty to issue permits arises under the Act when an application is filed supported by proof that the facility will not cause a violation of the Act or Board rules. (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a).) It follows that to charge a violation of section 39(a) of the Act, a complaint must allege facts to demonstrate that the permit was issued upon faulty proof by the applicant or in the absence of the required proof.

■■ ■ In our opinion, the allegations of paragraph 4.G. are pure conclusions which fall far short of being sufficient to allege an improper or culpable issuance of the permit. It is correct that pleadings or charges in an administrative proceeding need not be drawn to comply with the same technical requirements as imposed in court actions. (*Mystik Tape v. Pollution Control Board* (1973), 16 Ill. App. 3d 778, 783, 306 N.E.2d 574, *rev'd on other grounds* (1975), 60 Ill. 2d 330, 328 N.E.2d 5.) However as above pointed out, administrative pleadings should be required to "allege proper facts to demonstrate the basis * * *" upon which the claim of the pleader is founded. (See *Warren v. Meeker* (1973), 55 Ill. 2d 108, 114, 302 N.E.2d 54.) If the respondent's motion to dismiss the complaint be treated as in a court of record, it would not be deemed to admit the conclusions stated in paragraph 4.G. but only well-pleaded facts. (*City of Chicago v. Loitz* (1975), 61 Ill. 2d 92, 93, 329 N.E.2d 208.) Paragraph 4.G. is, in our opinion, completely deficient in this regard.

Accordingly the order appealed from is affirmed as regards dismissal of paragraphs 4.E. and 4.G. of petitioner's complaint. The order is reversed as regards paragraphs 4.A. through 4.D. and 4.F. of the complaint and the cause is remanded to the Board for further proceedings.

Affirmed in part, reversed in part and remanded.

McGLOON and O'CONNOR, JJ., concur.